## WILLIAM B. AUSTIN

*v.*

## JOHN L. YOUNG et al.

[Submitted December 30th, 1918.  Determined February 20th, 1919.]

1. Equity can only recognize a voluntary intention to create a trust in land in favor of another when the trust has been executed—that is, when it has been perfectly and fully declared, and has thus resulted in the creation of a defined equitable estate in the donee.

2. When a valuable consideration exists between the alleged trustee and the *cestui que trust,* a court of equity may deem a contract to declare a trust as equivalent to an actual declaration.

3. While the terms of an express trust must be disclosed by written evidence with sufficient certainty to enable a court of equity to enforce its performance, yet parole evidence is admissible to show the circumstances under which the written evidence was executed in aid of its construction.

4. A voluntary parole promise by one to purchase land with his own money and hold it in trust for another is within the statute of frauds, and unenforceable as an express trust. If not founded on a consideration, even a written promise to become such a trustee could not be enforced as an express trust.

5. Revenue statements concerning the real estate in question signed by the secretary or bookkeeper of the holder of the title to the land, and rendered to the supposed *cestui que trust*, or entries in the books of the legal holder of the title made by such secretary or bookkeeper, cannot be taken as evidence of the existence and terms of the trust to satisfy the words of the statute of frauds, unless such secretary or bookkeeper was authorized to declare a trust, especially as they do not disclose the nature and terms of any trust that may have existed.

6. Parole evidence is not admissible to establish the nature and extent and terms of the interest of the *cestui que trust*. It may be used to construe latent ambiguities, but not to supply unstated terms to the signed writings which are claimed as executed voluntary declaration of trust.

7. The evidence legally admissible in this case, *held* not to establish the trust stated in the bill.

On final hearing on bill to establish and enforce a trust in land.

*Mr. John Rauffenbart* (by *Ulysses G. Slyron*), for the complainant.

*Messrs. Thompson & Smalhers,* for the defendant Young and others.

*Mr. Albert C. Abbott* (by *Enoch A. Higbee*), for the defendant Isaac Aaron.

*Messrs. Bourgeois & Coulomb,* for the defendant Myer Cravis.

Leaming, V. C.

This suit is to establish and enforce a trust of real estate in favor of complainant.

The primary inquiry herein is whether the trust which is claimed to exist is adequately manifested and proved by the writings which have been offered in evidence for that purpose.

By our statute of frauds it is declared as a rule of evidence that all declarations and creations of trust of lands shall be manifested and proved by some writing, signed by the party who is or shall be by law enabled to declare such trust, or else the trust shall be utterly void and of no effect. The exclusion

of resulting and constructive trusts from the operation of that statute need not be here considered; the trust here alleged to exist is neither a resulting nor a constructive trust.

No consideration is necessary to support an express trust of lands if the existence of the trust and its terms are adequately established in the manner required by our statute, since when a trust of lands is thus established as definitely and completely declared it stands as in the nature of a completed gift, vesting an absolute equitable estate or title in the *cestui que trust*. But like other gifts it must be fully completed to become effective as a gift. As equity cannot aid in perfecting a gift it can only recognize a voluntary intention to create a trust in land in favor of another when the trust has been executed, that is, when the trust has been perfectly and fully declared, and has thus resulted in the creation of a defined equitable estate in the donee; until then, in the absence of a consideration, equity will not enforce it but will consider it a nullity.

But when a valuable consideration exists between the alleged trustee and *cestui que trust,* a court of equity may deem a contract to declare a trust as equivalent to an actual declaration, upon the equitable rule that what ought to be done will be considered as done; this is sometimes expressed in the formula that a valuable consideration will induce a court of equity to complete an imperfectly created trust.

These general principles are given recognition in the following decisions in this state: *Janes* v. *Falk, 50 N. J. Eq. 468, 472; Landon* v. *Hutton, 50 N. J. Eq. 500; Wittingham* v. *Lighthipe, 46 N. J. Eq. 429; Ownes* v. *Ownes, 23 N. J. Eq. 60, 62.* See, also, *3 Pom. Eq. Jur.* §§ *996, 997.* It is also the privilege of the answering defendants in this suit, who claim as innocent purchasers for value without knowledge of the alleged trust, to require the trust to be established by evidence in conformity to our statute without specifically pleading the statute as a bar. *Whyte* v. *Arthur, 17 N. J. Eq. 521.*

The exaction that the terms of an express trust must be disclosed by the written evidence with sufficient certainty to enable a court of equity to enforce its performance by its decree, in no way denies to parole evidence its recognized office to disclose the

circumstances under which the written evidence may have been executed in appropriate aid of its construction; but the statutory written evidence, properly construed, must establish the existence of the trust and its terms.

Since it may be thought that the several writings which have been offered in evidence should, when considered together, be treated as an agreement to declare a trust, it must be first ascertained whether any consideration has existed to support an agreement of that nature.

By the testimony of complainant it appears that defendant Young told complainant that he, Young, would buy the property here in controversy and would from time to time collect enough rents to pay for its maintenance, and when he should be paid his expenditures in the transaction he, Young, would convey the property to complainant. The property had formerly belonged to complainant and had been sold on foreclosure to the mortgagee; but complainant does not claim that Young was responsible for that. The utmost claimed by complainant is that Young, as his friend, advised him to let the property be sold at the foreclosure sale, and stated that he, Young, would then go to the purchaser and fix it up for complainant, and that after the foreclosure sale Young· stated to complainant that he would buy the property and hold it for complainant in the manner already stated. This promise on the part of Young was by parole and was purely voluntary. It was merely the expression of a friendly purpose of one friend to another to buy a property and carry it until the other should be able to take it over and relieve the purchaser from the expenditures or obligations incurred by him. Young was financially able to buy the property, while complainant was not; as a friendly act Young accordingly volunteered to buy it for the benefit of complainant in the manner stated. No amount appears to have been suggested as the price at which Young should purchase; the whole plan was apparently based upon the hope that Young would be able to buy at a favorable price and the further hope that he might become relieved from his expenditures and obligations incurred in connection with it, in which event he was to turn it over to complainant. The transaction was in no sense a loan of

the purchase price from Young to complainant. No obligation for payment has been executed by complainant at any time, nor am I able to believe that any binding obligation of that nature was intended by either of the parties. It was to be, in effect, a mere privilege for complainant to take over the property if and when Young should be relieved from the expenditures and obligations incurred by him in the transaction. By endorsements on notes Young was already carrying obligations of complainant in a large amount. Complainant testified that the understanding was that he was to be privileged to receive a deed from Young for the property here in controversy when Young had received the money expended by him. Young has not testified; but other testimony of complainant and the testimony of Albertson strongly indicate that Young's understanding of the original plan was that complainant would only be privileged to take over the property when Young should be fully discharged from all obligations incurred by him in behalf of complainant—that is, obligations incurred by Young as endorser on complainant's commercial paper as well as those incurred in connection with the property here in question. To that extent the terms of the alleged trust must be said to be uncertain, so far as the original understanding of the parties may be thought competent to define the terms of the trust. At the conclusion of the hearing it was urged by complainant that the transaction might be treated as a deed to Young, or to Young's appointee, to secure a debt of complainant, and hence, in legal effect, a mortgage, thus rendering parole testimony competent to establish complainant's equitable title. Not only does the bill allege that the legal title was held in trust for complainant, but the testimony clearly negatives the idea of a loan of money to complainant.

The foregoing brief statement of facts antecedent to the purchase by Young sufficiently discloses that the original promise of Young was purely voluntary and was no more than a parole promise, wholly unsupported by any consideration, to purchase land with his own money and hold it in trust for complainant in the manner stated. A voluntary parole promise by one person to purchase land with his own money and hold it in trust for another is, of course, within the statute of frauds and unen-

forceable as an express trust. *39 Cyc. 47.* As already pointed out, if the engagement should be in writing the promise to become a trustee might be enforced if founded on a sufficient consideration; if not founded on a consideration, even a written promise to become a trustee could not be enforced as an express trust. *Wittingham* v. *Lighthipe, 46 N. J. Eq. 429.*

Subsequently to the parole engagement of Young, already referred to, Young negotiated the purchase of the property in question. Title was taken by a corporation by the name of Estates of Chelsea. The most favorable view that can be adopted on behalf of complainant is to assume—an assumption perhaps admitting of some doubt under the evidence—that that corporation was so far owned and dominated by Young as to be, in legal effect, Young. In that view the adverse effect upon complainant of the resolution of the board of directors of that corporation touching the purchase of the property by it could be measurably disregarded. The purchase appears to have been made for the amount of the foreclosure decree, with costs, interest, taxes and some other expense items added. Part of the purchase price was paid in cash with money of either Young or the corporation referred to and the balance by a purchase-money mortgage executed by the corporation, the bond secured by the mortgage being signed by the corporation and Young. The corporation thereafter executed a new mortgage on the property for approximately the entire original purchase price and discharged the purchase-money mortgage referred to, the new mortgage securing a bond of the corporation; in that manner the amount of cash originally paid was restored to Young or the corporation, but the obligation on the new bond secured by the mortgage continued. Thereafter the corporation collected most of the rents of the property; complainant appears to have collected some of the rents; complainant also took a lease from the corporation for the apartment occupied by him.

Written financial statements were from time to time supplied to complainant by one Albertson, who was secretary and bookkeeper of the corporation, and also an employe of Young. These written statements, so far as produced, disclose the revenues received by the corporation from the property and various

expenditures made by the corporation in maintenance of the property. These statements were made up by Albertson from the data appearing on the books of account of the corporation. If statutory written evidence of the trust and its terms is to be found, it must be found in these revenue statements and the entries on the books of account of Estates of Chelsea from which the statements are made up; no other writings exist.

It is evident that for these writings to adequately establish a voluntary trust and its terms they must meet the requirements already referred to; they must be signed by the party who is or shall be by law enabled to declare such trust, and they must not only disclose the existence of a trust declared *in præsenti,* but must disclose its terms with sufficient clearness and certainty to enable a court to enforce it. As phrased in *28 Am. & Eng. Encycl. L. (2d ed.),* at *p. 879:* "They must be sufficient to establish the whole trust; not only that there is a trust, but what the trust is." As stated by Prof. Pomeroy:

"The fact that a trust of lands *is created* must not only be manifested and proved by a writing properly executed, but it must also be manifested and proved by such a writing what the trust is. The declaration of trust, whether written or oral, must be reasonably certain in its material terms; and this requisite of certainty includes the subject-matter or property embraced within the trust, the beneficiaries or persons in whose behalf it is created, the nature and quantity of interests which they are to have, and the manner in which the trust is to be performed. If the language is so vague, general or equivocal, that any of these necessary elements of the trust is left in real uncertainty, then the trust must fail." *3 Pom. Eq. Jur.* § *1009.*

See, also, *Newkirk* v. *Place, 47 N. J. Eq. 477, 486.*

Most of these revenue statements are unsigned. Two of them are signed. But as they have apparently been prepared for some single purpose, and if all could be produced, such would no doubt connect with the others, they probably may be all regarded as component parts of the two which are signed.

Of the two which are signed, one is signed "Estates of Chelsea, by N. S. Albertson, Sec.;" the other "N. S. Albertson, Agt." Albertson, who prepared and signed these statements and who kept the books of Estates of Chelsea, has testified that it was his understanding from parole statements made to him by

Young that the property was being held for the benefit of complainant to enable complainant to take it over at some future time when he should have fully discharged all of his pecuniary obligations to Young or on which Young was liable. He conceded that his information on the subject was meagre, but testified that he so understood the general situation and kept the books of Estates of Chelsea consistently with that theory and prepared these various revenue statements in that view. But there is no testimony that either Young or Estates of Chelsea at any time authorized Albertson as agent or otherwise to sign any statement or other paper or make entries on the books of Estates of Chelsea in the nature of a declaration of trust or in any way to declare a trust touching the property. As secretary and bookkeeper of the corporation he obviously could not do so without authority for that purpose being conferred on him by the corporation; as clerk or bookkeeper of Young his general authority would be subject to like limitations. It is accordingly impossible to treat these signed revenue statements or the book entries from which they are taken as writings "signed by the party who is or shall be by law enabled to declare such trust," unless the inference is justified that Albertson was authorized to declare a trust.

But if either the revenue statements or book entries, separately or together, could be deemed to satisfy the statutory requirement for a signature by the party who is or shall be by law enabled to declare such trust, there yet remains entire uncertainty, so far as written evidence is concerned, as to the nature and terms of any trust that may have existed. In this connection it should be still borne in mind that any trust or engagement to hold in trust that may have existed in favor of complainant was without consideration, and accordingly any writing, to be effective, must presently and completely declare the trust and its terms—in a word, must execute it—and cannot be seized upon by a court as an agreement to declare a trust and be enforced as such.

These several revenue statements include, as debit entries, moneys paid by Estates of Chelsea for repairs, taxes, insurance, interest on mortgage, sewer rent and other expenses incident to

the property in question, and also moneys paid for similar expenses on other property not here involved, the legal title to which was in complainant, and also commissions for all rent collected; as credit items, rents collected from the property here in controversy and from other property the legal title to which was in complainant. On the books of Estates of Chelsea there is an account in the name of complainant in which these items are assembled. The statements offered in evidence all show credit balances to complainant; but in the complete account on the books of Estates of Chelsea, the balances are at times debit balances against complainant. In the books of Estates of Chelsea there are also separate property accounts showing the items incident to the several properties; the caption of the account containing items incident to the property in question designates the property as the Austin property. That, however, signifies little, as the property was commonly known by that name. On their face these several statements of accounts disclose no more than the fact that Estates of Chelsea was collecting rents of the property here in question and of certain other property, the title to which stood in the name of complainant and charging commissions for all rents collected by it, and was paying various expenses incident to all the properties referred to, including interest on mortgages, and rendering statements to complainant disclosing such revenues and expenses. Nowhere is it declared in these statements or on the books of Estates of Chelsea why or to what extent or for what purpose complainant may have been interested in that information or in such tabulated statements or in the property. Complainant's interest in these accounts, so far as the property here in question is concerned, may have reasonably arisen from many situations other than as a *cestui que trust*. The utmost that can be said as to what these written statements or the books of account of Estates of Chelsea disclose, either considered separately or together, is that they disclose matters which are consistent with the claim of complainant; but what they in fact disclose is that Estates of Chelsea held the legal title to the property, subject to a mortgage which it had executed on the property, under some undefined engagement or understanding with complainant which included

the collection of rents of the property by the Estates of Chelsea, together with rents of other property admittedly owned by complainant, and the payment by that corporation of expenses incident to the property in question and the other property. For more information than that parole testimony must be resorted to. It is by complainant's parole testimony that the nature and extent and terms of his alleged interest is wholly disclosed; that interest, so disclosed, does not construe latent ambiguities in the terms of, but supplies unstated terms to, the signed writings which are claimed as an executed voluntary declaration of trust.

Herein complainant's case must fail. Unless resort can be had to parole evidence to define the nature and terms of any trust that may be claimed to have existed that information cannot be had. So far as the writings disclose, and wholly consistent with them, the property may have been held to secure some undefined obligation of complainant to the corporation or to Young or to some other person, thus constituting complainant the owner of a mere equity of redemption; the writings are equally consistent with a variety of contractual engagements which may have existed between the parties touching the property; the writings may be said to be also consistent with the existence of a trust of some kind in favor of complainant. It is accordingly obvious that parole evidence must be resorted to first to determine whether the writings import a trust in favor of complainant, then, with that so ascertained, parole evidence must be further depended upon to disclose the nature and terms of the trust. That cannot be done. Authorities specifically to that effect have been already cited herein, to which may be advantageously added *Smith* v. *Matthews, 3 DeG. F. & J. 139.* It is there said (at *p. 152*) : "When this court is called upon to establish or act upon a trust of lands by declaration or creation, it must not only be manifested and proved by writing, signed by the party by law enabled to declare the trust, that there is a trust, but it must also be manifested and proved by writing, signed as required, what the trust is." And (at *p. 151*) the language of Lord Alvaney, in *Forster* v. *Hale, 3 Ves. Jr. 707,* is quoted with

approval that "it [the trust] must be proved [by the writings] *in toto,* not only that there was a trust, but what it was."

It may be appropriately added that the testimony of complainant touching the nature and terms of the trust was to the effect that it was conditional—that is, that when the obligations incurred by Young with reference to the property should be discharged, complainant was to become entitled to a conveyance of the property. The testimony of Albertson discloses a further possible condition, to the effect that complainant was to also discharge the obligations which Young had incurred as endorser on notes of complainant. But it is upon the parole testimony and not upon the writings that complainant must in this suit rely to establish either the certain existence of a trust in his favor or its nature, terms and conditions.

This view renders it unnecessary to consider whether the purchasers of the property acquired their titles without notice of complainant's claim.

I am obliged to advise a decree dismissing the bill.