Specific performance of an oral agreement to make a will in favor of the complainants and others is prayed for in the bill of complaint filed herein. The bill alleges that the decedent, Julia Gertrude Hannon, in September, 1910, entered into a ceremony of marriage with John Samuel Lyle; that she then was of the age of thirty-one years, and he was of the age of ninety-two years. Lyle died July 27th, 1912, not quite two years after their marriage. His will dated June 14th, 1912, was admitted to probate before the surrogate of the County of Bergen in this state on August 7th, 1912. It made *Page 60 
various specific bequests; the widow, Julia Gertrude Lyle, received the sum of $500,000, his realty in Tenafly, New Jersey, and the residue of the estate (Exhibit D-1). In the last paragraph of the will the following appears:
"In making this my Last Will and Testament and in deciding upon the provisions thereof, I have done so after much thought and consideration and have not made any provisions whatsoever for any relation who may be a cousin or second or third cousin, of mine or related in any degree to me because of the fact that I do not feel that my associations with or interest in them or any of them is such as to make it in any sense proper or obligatory upon me as a moral duty so to do."
The alleged oral agreement, complainants say, arose out of a family gathering or conference held in Brooklyn, New York, in August, 1912, shortly after the probate of the will, arranged by their grandfather, Edward Lyle Taylor, who was a first cousin of John Samuel Lyle. There present, besides the grandfather Taylor, it is alleged, were Lyle's widow, Julia Gertrude Lyle, Ella Louise Smith, a second cousin (daughter of Edward Lyle Taylor), Frederick W. Smith, a third cousin (son of Ella Louise Smith), Edwin Taylor, a third cousin (grandchild of Edward Lyle Taylor), Maude E. Leverich, a third cousin (grandchild of Edward Lyle Taylor). Grandfather Taylor then confronted Julia Gertrude Lyle and condemned her marriage to his cousin, John Samuel Lyle. He assailed its legality and threatened to attack the validity of the will.
The complainants allege that under the terms of the oral agreement the widow, in consideration of the forbearance of the aforesaid relatives of her husband taking the threatened legal proceedings, promised that she would execute a will and therein would devise and bequeath one-half of her estate equally among Frederick W. Smith, William Lyle Taylor and Maude E. Leverich; and in the event that any of then predeceased her, then the share of such decedent was to go to the surviving beneficiaries equally. Frederick W. Smith died in 1913 without any children surviving him. The complainants were the surviving beneficiaries. Complainant Maude E. Leverich died during the pendency of this suit. *Page 61 
Complainants say the agreement was not kept by the widow; that she made a will dated February 1st, 1939, admitted to probate December 20th, 1939, bequeathing and devising her entire estate to others.
The power of equity to specifically enforce a parol agreement to make a will is well recognized. Clawson v. Brewer, 67 N.J. Eq. 201; 58 Atl. Rep. 598; affirmed, 70 N.J. Eq. 803;67 Atl. Rep. 1102. See, also, Johnson v. Hubbell, 10 N.J. Eq. 332;Van Dyne v. Vreeland, 11 N.J. Eq. 370; Davison v. Davison,13 N.J. Eq. 246; Young v. Young, 45 N.J. Eq. 27;16 Atl. Rep. 921.
Julia Gertrude Lyle in her petition for the probate of her husband's will, stated that in addition to herself, Edward Lyle Taylor, a first cousin (grandfather aforesaid), was the only other heir and next of kin of the deceased.
The complainant, William Lyle Taylor, and his brother, Edwin Taylor, testified, in effect, that grandfather Edward Lyle Taylor called the alleged conference; that during the course of it, he complained and said to the widow, Mrs. Lyle: that she had taken an unfair advantage of her position as a nurse to John Samuel Lyle by inducing him to marry her; that his advanced years made him susceptible to her undue influence; that she married him in order to obtain his money; that before, and at the time of the marriage, and thereafter, he had been, and was, a very ill man; that when he executed his will in the month preceding his death he was too sick to understand the nature and quality of his act; that his eyesight had failed to the point where he could not read; and that under all the circumstances he intended to prosecute a suit to contest both the bona fides of the marriage and the execution of the will.
A witness for the complainants, Ella Smith, now of the age of seventy years, testified, in substance, that at the time of the conference she was in the Brooklyn home in a room on the floor upstairs above the conference room; that she heard part of the conversation from the room below; that she recognized the voices of those engaged in it; that she distinguished Julia Gertrude Lyle's voice from the others and heard her say that if they would make no contest of the Lyle will and *Page 62 
raise no fuss, she would, in her will, leave the grandchildren one-half of what she had received under her husband's will. The witness declared that after hearing this statement she decided to remain no longer and left the house. Part of the weakness of her testimony is her admission that she had never seen the widow before the day of the alleged conference, nor thereafter. Her identity of the widow's person is based on information and hearsay. She testified whatever view of the person of the widow she may have had was from an upper floor in the house as the widow entered it on the floor below. Her testimony of facts was highly unsatisfactory and not impressive.
Edwin Taylor, the brother of the complainants, stated that he was present at the conference and heard Mrs. Lyle submit the proposal to leave one-half of the estate to the Taylor grandchildren if the plan to sue would be abandoned. He declared that he announced at the conference that he did not want any of the Lyle money.
William Lyle Taylor, Alfred H. Hanson, Melvin H. Butler and Sylvester Beer, testified, in effect: that in 1934 they saw and spoke to Mrs. Lyle; that she had decided to develop her realty in Tenafly, New Jersey, which she had acquired through her husband's will; that they discussed the development plans with her and that she stated it was her intention to convey that property to Taylor, the complainant. Hanson and Butler were promoters and salesmen, friends of complainant, and brought by him to the widow to promote the land development and act as sales agents. Beer was a friend and companion of Taylor's who offered him the use of his automobile and conveyed him therein from New York City to Mrs. Lyle's New Jersey home. The title to the premises allegedly to be developed was not in Mrs. Lyle; it was in a corporation and subject to its control. Mrs. Lyle died without having developed the realty in accordance with the alleged plan and without executing a deed of conveyance to complainant.
I was not impressed by the testimony of complainants' witnesses as to the holding of the so-called conference, or that the widow declared she intended to convey the Tenafly realty to the complainant Taylor. The testimony is lacking in *Page 63 
clarity and wanting in certainty. The circumstances and incidents related do not square with the widow's conduct and her control and management of her husband's extensive interests.
Mrs. Lyle, subsequent to the death of her husband, employed a competent and respected lawyer, Mr. Chauncey G. Parker, to represent her. He appeared for her in the matter of the probate of her husband's will and in the several appeals that had been taken from its probate. It does not seem credible that she alone and unaccompanied by counsel, would have entered such a conference as complainants allege, and make the various promises as they assert. Experience and reason do not countenance such course or policy. Her husband's estate was a large one, involving approximately $5,000,000. In the management of it, she undoubtedly was confronted with many complex legal problems which could be properly handled and disposed of only by a trained legal mind. She evidently realized the necessity of able legal guidance and wisely employed Mr. Parker for the purpose. Her interest in her husband's estate was questioned by the many claimants filing the appeals from the probate of her husband's will. Mr. Parker stood beside her in all of that litigation and successfully piloted her over the difficult legal shoals there encountered. Is it reasonable to suppose that she, without a supporting friend or counselor, would confer with a known unfriendly array of persons who had assailed her character, had questioned her motives, and sought to acquire one-half of her husband's estate, and then and there bind herself to purchase their silence and liberty of action? No, I do not think so. The complainants' story is fraught with doubt and, in my opinion, lacks the earmarks of truth. The feelings her deceased husband had had for his relatives were well known to her. He made them plainly evident in the last paragraph of his will (Exhibit D-1). I believe she would endeavor to respect them by particularly avoiding an entry into a contractual or financial obligation with them.
The testimony of the complainants' witnesses sounds unreal, lacks credibility and in some respects is contradictory. Those who testified to the alleged conference swore to statements *Page 64 
allegedly made twenty-nine years ago; their recollections of the details thereof were faulty and not convincing. Upon such recollections this court is asked to award fifty per cent. of the estate of one whose lips now can make no admissions or denials of the facts in issue and can give no details whatever because they are sealed in death.
Further, a check of the evidence in the instant case, without detailing, discloses many material discrepancies in the stories of the several witnesses produced by the complainants. It shows a lack of certainty and a want of clearness of fact, which leads to the conclusion that the decedent, Julia Gertrude Lyle, did not make any such promise as complainants contend.
This court regards with the utmost suspicion oral agreements to make a will. When called upon to consider them, it necessarily searches most closely all the facts and surrounding circumstances, the relationship of the parties to it, and goes most fully into the interests involved. The party asserting such agreement must present evidence that is definite, precise, and certain as to its terms, and clear and convincing proof of all the circumstances. Those demands were not here met.
I am satisfied that the complainants are not entitled to the relief sought. *Page 65