JULIUS DE GEETER, complainant-respondent,

*v.*

GEORGE C. BENNETT, defendant-appellant, and MARY DE-GEETER, third party.

[Argued February 9th, 1943. Decided May 18th, 1943.]

*Mr. Edouard L. Dunne (Mr. Herbert L. Hanschka,* of counsel), for the appellant.

*Messrs. Breslin & Breslin (Mr. John J. Breslin, Jr.,* and *Mr. James A. Major,* of counsel), for the respondent.

The opinion of the court was delivered by

PORTER, J.

This appeal is from a decree of the Court of Chancery restraining Bennett, the defendant, from prosecuting an action in the Supreme Court brought by him against De Geeter,

the complainant, in which he sought damages for a breach of contract and for the reasonable value of services performed.

The controversy between these men concerns their business relationship which began in the fall of 1936 and continued until June 30th, 1938. The respective versions of the controversy briefly seem to be as follows: Bennett says that he had been engaged in business for a number of years as a general contractor and that he had some experience in operating skating rinks. He says that De Geeter in October of 1936 made inquiries of him about the skating rink business, and made the suggestion that they engage in that business together. He proposed that a suitable site be selected by them on which a good size skating rink would be erected, that he would furnish the necessary money for the project, and that after he had recovered the amount of the investment out of the business, they would share the profits thereafter equally. It was further suggested that Bennett was to draw the plans for a suitable building and would purchase the materials and supervise the erection thereof, and that from the time the rink was in operation both parties were to have drawing accounts for their living expenses. To these proposals Bennett says that he agreed. A few days later he says De Geeter suggested a change in the plan. It was that the proposed business be incorporated and the stock therein be divided as follows: 50 per cent. to De Geeter, 49 per cent. to Bennett, and 1 per cent. to De Geeter's son, Frank. Bennett says that he agreed to that proposal. He further says that De Geeter purchased a lot, the location and suitability of which met with his approval, that he drew a plan for the building from which estimates were secured, that he superintended the purchasing of material, the making of contracts, and supervised the grading of the lot and the erection of the building. He says that he received no compensation for this work, the agreement being that he was to perform those services as part of the joint venture or partnership.

The rink was opened for business on September 17th, 1937, and Bennett worked there until the place was closed

for the summer on June 30th, 1938, when he was discharged. De Geeter denies ever having made any such agreements with Bennett, saying that there was no partnership or joint adventure between them. He says that it is true that he consulted Bennett in the matter of the building, and that Bennett did do certain work concerning the erection of it, but that he was not in charge and did not supervise the erection but was simply a handy man, and that he gave his services in consideration of being employed at the rink when business was commenced there, that in pursuance of that understanding he was employed at the rink and paid for his services, that he was not discharged, but quit of his own volition. Whatever arrangement there was between these men was by verbal understanding. There was no written contract, memorandum or correspondence between them relating to it.

In December of 1938 Bennett brought suit against De Geeter in the Supreme Court for damages for the breach of this alleged verbal agreement. Later on he amended his complaint and included a count for the reasonable value of his services. There were two motions made to strike the amended complaint, on the ground that the suit was, in effect, for an accounting in a partnership or joint adventure and was not cognizable at law. These motions were denied. Mr. Bennett was examined in the law action before trial, and in that examination testified that there was in fact a partnership between him and De Geeter in the skating rink business. A bill was then filed in Chancery, setting forth the allegations of Bennett in the law action and as testified to by him, and praying for an injunction to restrain the prosecution of the suit at law on the theory that the law court was without jurisdiction and that the controversy was cognizable only in equity. After hearing, a preliminary injunction was granted and a motion by Bennett to strike the bill was denied. Notice of appeal was filed by Bennett but later abandoned and an answer and counter-claim filed. In the counter-claim Bennett asserted a partnership or a joint adventure and prayed for an accounting, that a constructive trust be declared in his favor, that the court construe the relationship existing between the parties, for the appointment

of a custodial receiver and for a restraint against transferring of assets. The matter was heard by Vice-Chancellor Egan, and at the conclusion of the complainant's case Bennett moved for a dismissal of the bill on the ground that no equitable case had been made out by the complainant. This motion was denied, and Bennett proceeded with his proof under his counter-claim.

We conclude that the learned Vice-Chancellor was right in deciding that Bennett's action at law was actually on the theory of a partner seeking to recover partnership profits. Irrespective of the language used in the complaint at law, Bennett's testimony both in the law court and in the Court of Chancery fully bore out that theory. Chancery had juris-diction whether the relationship was a partnership or a joint adventure. *Cf. Jackson* v. *Hooper, 76 N. J. Eq. 185; 74 Atl. Rep. 130; Braddock* v. *Hinchman, 78 N. J. Eq. 270; 79 Atl. Rep. 419; affirmed, 79 N. J. Eq. 596; 82 Atl. Rep. 892; Cooperstein* v. *Shapiro, 118 N. J. Eq. 337; 179 Atl. Rep. 29; affirmed, 122 N. J. Eq. 238; 192 Atl. Rep. 826.*

In any event, when Bennett abandoned his appeal from the determination of the Court of Chancery in refusing to strike the bill, and filed an answer and counter-claim in that suit setting up in his counter-claim the allegation that he was a partner or engaged in a joint adventure with De Geeter, he submitted himself to the jurisdiction of Chancery. He made an election of remedies. The issue thus presented in that court was: was there a partnership or a joint adventure, or what was the relationship between the parties, and how much, if anything, was due Bennett from De Geeter. The Vice-Chancellor concluded that there was no relationship of partnership or joint adventure between the parties, but rather that the relationship was simply that of employer and employee, and that there was nothing due from De Geeter to Bennett. These issues, while sharply disputed. are after all entirely factual questions. The appellant contends that the conclusions of the Vice-Chancellor are contrary to the weight of the testimony. We do not think so. There was an abundance of proof which justifies the conclusions reached. It was for the court as the trier of the facts to judge the

credibility of the witnesses and to weigh the probabilities of their testimony. *Cf. Riehl* v. *Riehl, 101 N. J. Eq. 15; 137 Atl. Rep. 787.*

The decree appealed from will be affirmed.

*For affirmance*—CASE, BODINE, PORTER, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 8.

*For reversal*—THE CHIEF-JUSTICE, PARKER, DONGES, HEHER, PERSKIE, JJ. 5.