On September 23d 1934, Jacob Max died in Newark, New Jersey, leaving a last will and testament dated August 15th, 1934, which was probated before the surrogate of Essex County on or about November 2d 1934. The will named Joseph Seibel executor, and he qualified as such. Several months thereafter he resigned as executor and Sol C. Max, the defendant, was appointed as administrator cum testamento annexo. The decedent was survived by his wife, Kate, one daughter, the complainant, and four sons, Sol C., Philip, Joseph and Samuel. *Page 555 
The will among other things provides that the estate be held by the executor in trust with a power of sale, directs the payment of $1,000 to each of seven grandchildren, the payment of $2,000 to Elizabeth Kulp, and $50 to decedent's wife, Kate. Under its terms the executor must consult with Sol, the defendant, to co-operate with him, to compensate him for operating the real estate, and at the end of five years to turn over to him the unsold property — if Sol so requests. The residuary estate, in effect, goes to Sol.
The decedent owned four parcels of real estate, stock in the Clinton Milk Company, cash in bank, jewelry, and other personal property. The stock in the Milk Company, the bill alleges, was appropriated by Philip, one of the defendants.
Under a prior will of the decedent, made in or about July, 1932, the complainant was given a 35% interest in the decedent's estate.
The complainant now seeks the specific performance of an alleged oral agreement made in 1934 between her and the defendant Sol. She alleges she contemplated contesting the probate and validity of the decedent's will and so informed Sol who thereupon agreed, inter alia, to give her a 49% interest or share in the decedent's estate, and hold it in trust for her until distribution, supply her with food and clothing, permit her to live in the homestead at 603 Elizabeth Avenue, Newark, New Jersey, and pay the carrying charges thereof if she refrained from attacking the validity of the will. She asserts a partial performance of the alleged agreement by Sol who provided money payments covering a period of approximately six and a half years, or until the early part of 1941, when he ceased making the payments.
She said that at the time of his death, the testator owned 250 shares out of a total of 750 shares issued and outstanding, of the capital stock of the Milk Company; that the remaining 500 shares are owned by the defendant Philip and one other person. The agreement made with Sol she declares gave her 49% of the testator's 250 shares of the Milk Company stock. She contends that Philip ratified, affirmed, and acquiesced in, the oral agreement, and promised to turn over to her 49% of the testator's 250 shares of stock. As against *Page 556 
Philip and the Clinton Milk Company she also seeks a discovery and an accounting.
Complainant, her daughter, and mother lived in the homestead for a number of years until 1941, when the mortgage covering the premises was foreclosed, and she was obliged to vacate. She contends that she demanded an accounting in 1935, but that Sol told her to be patient and that she would get her 49% interest in the estate in due time.
The testimony shows that the defendants Sol and Philip contributed to the support and maintenance of complainant and her daughter, and paid for the upkeep of the homestead until the year 1941. Sol's contributions to that end approximated $11,000. The payments were made to complainant largely upon her oral or written requests. Among the defendants' exhibits are a number of letters and writings showing complainant's requests for moneys to buy alleged necessities. None of the writings base the request upon a right arising from the alleged oral agreement of a 49% share of the estate. The defendants deny that there ever was such an agreement. They say that whatever moneys they advanced to the complainant were because of a family interest in her welfare.
The estate of decedent in 1934 when the alleged promise to give complainant 49% of the estate was made, consisted of four parcels of real estate. The first on Bloomfield Avenue, Caldwell, which was foreclosed prior to the death of decedent, and was lost thereby; and a deficiency judgment of $10,000 was subsequently recovered against the estate. The second property was on Clinton Avenue, Newark, New Jersey, assessed for about $50,000 with a mortgage on it for $50,000. The third property was on Westfield Avenue, Elizabeth, New Jersey, assessed at $80,000, with a mortgage of $81,475 thereon. The fourth property was 603 Elizabeth Avenue (the decedent's home, wherein complainant dwelt). It was subject to a mortgage for $15,000 which was eventually foreclosed. It thus appears that two of the four parcels were lost by foreclosure. The other two properties are heavily mortgaged.
The personal estate consisted of household furniture, which *Page 557 
the complainant appropriated, and $1,400 in the bank in the name of Jaymax Realty Company (holding company for the real estate). As against this, there was a legacy of $2,000 to Elizabeth Kulp, which was settled for $400, and articles of jewelry. There was no other personal estate except an automobile to answer estate debts amounting to $18,000, the payment of seven $1,000 bequests to as many grandchildren, and the mortgage liens. Mr. Seibel received fees of $800 when he withdrew as executor and trustee. Other administration allowances had not been paid.
I was not impressed with the sincerity of the complainant's allegations. In many respects they are contradictory, lack credibility and sound most unreal and fantastic. There is a want of certainty and a lack of clearness about the so-called oral agreement, which leads to the inevitable conclusion that there is no basis for its existence. The suit is the culmination of a bitter family feud. Neither side presented convincing evidence. The testimony bears the earmarks of exaggeration and a total disregard of the elements of truth. The real facts in this case remain undeveloped and lie somewhere between the conflicting stories of the parties. Riehl v. Riehl, 101 N.J. Eq. 15;137 Atl. Rep. 787; De Geeter v. Bennett, 133 N.J. Eq. 349;32 Atl. Rep. 2d 335.
If the complainant had litigated the validity of the decedent's last will and succeeded in having it declared null and void, the defendant Sol would have benefited thereby to a greater extent than he would have through a performance of the alleged 49% agreement with the complainant. Under the decedent's prior will, the complainant was bequeathed 35% of the testator's estate, and the defendant Sol was given the remaining 65%. Sol appears to be a shrewd character, apparently familiar with the rule of profit and loss, and not of the type that would assume an avoidable loss.
At the conclusion of the complainant's case the defendant's counsel moved to dismiss the suit as follows:
1. "It is based upon an agreement to defraud the estate contrary to the will, made with a person who was administratorcum testamento annexo of the estate, and who is so sued, as well as individually, and that an agreement to divide *Page 558 
an estate contrary to a will constitutes a breach of trust; a breach of duty upon the part of a person who stands in a fiduciary relation to others in the estate, and is illegal, void, contrary to public policy, and will not be enforced. The authority for that is the case of Ellicott v. Chamberlin,38 N.J. Eq. 604. And having stated what I concede to be the principle of that case, I think that the facts in this case fit into it equitably as a will under which some seven thousand dollars is bequeathed to seven grantees, grandchildren of the deceased. The widow's dower right is provided for. A bequest to another party, and we have in this case a complainant's claim to be proven, an agreement made by her with a person, the chief beneficiary, and the person who became administrator cumtestamento annexo of the estate, whereby he and she agreed to divide this estate into a portion of 49% to her of the entire estate with an elimination, at least so far as the evidence discloses, of that provision whereby the other people who got seven thousand dollars under that will were to be taken care of, protected, or in any way provided for, with others. So that there was, as stated in the case, an agreement to divide the estate contrary to the will of the testator, and contrary to his will.
2. "Then I come to my second point that the agreement is void for uncertainty and cannot be here enforced.
3. "And I have also set up as a defense here laches, and the courts have said on that point that where the complainant's bill is for the enforcement of a legal right, and that's what this is, the equitable remedy is barred by acquiescence for the period, referring to the statute of limitations. In other words, the Court of Errors does not invoke the doctrine of laches against a complainant who sues upon a legal promise if she sues within the time permitted to her to do so by law, namely, six years. And this suit wasn't brought within six years. It had to be brought within the year 1940."
Under point one of the motion, if complainant's allegations were true, they would seriously affect the rights and claims of the seven grandchildren of the decedent, amounting to $7,000, as well as the other bequests mentioned in the will. It is a pact to divide the estate between the complainant and *Page 559 
Sol. Such a compromise certainly contravenes the terms of the will, is contrary to law and public policy, and results in a disposition of decedent's estate which the decedent never intended. 13 Corp. Jur. 415; Baer v. Fidelity Union Trust Co.,132 N.J. Eq. 333; 28 Atl. Rep. 2d, 275; affirmed, 133 N.J. Eq. 264; 31 Atl. Rep. 2d 823.
In Taylor v. Langenbacker, 130 N.J. Eq. 59; 21 Atl. Rep.
2d 219, the following appears:
"This court regards with the utmost suspicion oral agreements to make a will. When called upon to consider them, it necessarily searches most closely all the facts and surrounding circumstances, the relationship of the parties to it, and goes most fully into the interests involved. The party asserting such agreement must present evidence that is definite and certain as to its terms, and clear and convincing proof of all the circumstances. Those demands were not here met."
The second ground of the motion that the agreement is uncertain and lacks clarity seems to me to bear considerable weight. Complainant contends that she is to get 49% of the entire estate, but whether it is a gross or net percentage, does not appear. There were involved in the estate dower rights, gifts to legatees, and administration expenses. The evidence does not show whether the claims were to be first deducted or whether the complainant would bear a share of them.
The terms of the agreement are so ambiguous and uncertain that they are not capable of being enforced. Girard Trust Co. v.Schmitz, 129 N.J. Eq. 444; 20 Atl. Rep. 2d 21; Austin v.Young, 90 N.J. Eq. 47; 106 Atl. Rep. 395.
The third motion sets up the statute of limitations. The so-called agreement was made in October or November, 1934. The testator died in September, 1934. Suit, as before observed, was not commenced until November, 1941, approximately seven years after the alleged promise was made. Paterson v. East JerseyWater Co., 74 N.J. Eq. 49; 70 Atl. Rep. 472; Massie v. AsbestosBrake Co., 95 N.J. Eq. 298; 123 Atl. Rep. 155. *Page 560 
A consideration of all the facts and circumstances leads me to the conclusion that the motions of the defendants should be granted upon the first two grounds. It does not seem necessary to discuss the third ground. Also, upon the facts in the case the defendants are entitled to a dismissal of the bill.